**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 2013-0110 |
| THREE HUNDRED SIXTY-FIVE THOUSAND | ) | |
| FIVE HUNDRED SEVENTY-FIVE DOLLARS | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| MORE OR LESS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 2013-0111 |
| ONE 2009 DODGE DAKOTA SLT VEHICLE | ) | |
| ID NO.: 1D7HE32K59S765233, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**Attorneys:**
**Angela Tyson-Floyd, Esq.**
St. Croix, U.S.V.I.
        *For the United States*

**Yohana M. Manning, Esq.**
St. Croix, U.S.V.I.
        *For Claimant Baltazar Felix. Jr.*

<u>**MEMORANDUM OPINION**</u>

**Lewis, District Judge**

        This matter comes before the Court on the Government's "Motion[s] for Summary

Judgment" and accompanying Statements of Undisputed Facts and Memoranda of Law in

1

Support (13-cv-111, Dkt. Nos. 34-36), (13-cv-110, Dkt. Nos. 66-68); Claimant Baltazar Felix, Jr.'s Oppositions thereto (13-cv-111, Dkt. Nos. 45-46), (13-cv-110, Dkt. Nos. 73-74); and the Government's Replies (13-cv-111, Dkt. No. 47), (13-cv-110, Dkt. No. 75). The above-captioned consolidated actions are civil actions in rem for the forfeiture of $365,575.00 in U.S. Currency as well as the proceeds from the interim sale of a 2009 Dodge Dakota Truck with the Vehicle Identification Number 1D7HE32K59S765233 ("White Truck").[1] The Government seeks forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

For the reasons that follow, the Court will grant the Government's Motion for Summary Judgment as to the White Truck, and will deny the Government's Motion for Summary Judgment as to the $365,575.00 in U.S. Currency.

## I.    BACKGROUND

In late 2012, the Drug Enforcement Administration ("DEA") and the Virgin Islands Police Department ("VIPD") began an investigation of, and surveillance on, Claimant Baltazar Felix, Jr. ("Felix") based on the belief that Felix was working as a "money dropper" for an international drug trafficking organization. (Dkt. No. 68 at ¶¶ 1-2). The Government's Statements of Undisputed Facts attached as exhibits the Declarations of numerous DEA agents and VIPD officers involved in the investigation of Felix. The factual background provided by the Court herein summarizes the Government's Complaint and the Declarations of those agents and officers. At times, the Declarations recount secondhand information, including information reported in text messages or in de-briefings of an undercover agent.

According to the Government, the DEA received information that Felix "would be making a transfer of a large amount of money for a drug trafficking organization" on November 28, 2012

---

[1] The interim sale was conducted pursuant to an Amended Order entered by the Court on October 10, 2023. (Civil Action No. 13-111, Dkt. Nos. 45-46).

and again on June 4, 2013. (13-cv-111, Dkt. No. 35-1 at ¶ 4). While under DEA surveillance on November 28, 2012, agents observed Felix meeting with an undercover agent in Frederiksted, St. Croix. Agents observed Felix give the undercover agent a black bag or suitcase containing a "large amount of cash." (13-cv-111, Dkt. No. 35-1 at ¶¶ 5-6). On June 4, 2013 while under DEA surveillance, Felix was observed meeting with an undercover agent and driving a silver Dodge Dakota truck ("Silver Truck").[2] *Id.* at ¶ 8. This time, however, Felix was not observed transferring any money to the undercover agent. Instead, Felix and the undercover agent were observed leaving the location in separate vehicles. *Id.* The undercover agent then communicated via text message with the DEA agents that Felix did not have the money on him and that they would have to travel a short distance to get the money. *Id.* The undercover agent requested that the DEA agents not follow them. The DEA agents complied and began to travel to Felix's home to continue surveillance of his property. *Id.* at ¶¶ 8-9.

On the way to Felix's house, DEA agents observed Felix's son driving the White Truck in the opposite direction. *Id.* at ¶ 10. The undercover agent then texted the DEA agents that Felix drove to a dead-end road near the prearranged location and that Felix still did not have the money. *Id*. at ¶ 11. Upon being debriefed, the undercover agent reported that Felix's son arrived at the dead-end location in the White Truck, retrieved a black and blue gym bag from the White Truck, and handed that bag to Felix. *Id*. The undercover agent reported during debriefing that Felix then handed the undercover agent the black and blue gym bag, which contained a large sum of U.S. Currency. *Id*.

United States Drug Enforcement Agency Special Agent Chris Bell ("Agent Bell") reported that, on June 4, 2013, he had learned that Felix had arranged another cash delivery for June 5,

---

[2] The Government has not sought seizure of the Silver Truck.

2013, and, as such, the DEA continued surveilling Felix and his home. *Id.* at ¶ 12. On June 5, 2013, Felix was observed exiting his house with a large duffel bag. (13-cv-111, Dkt. No. 35-3 at ¶ 6). Felix first got into the White Truck with the duffle bag, but then parked the White Truck outside his residence. *Id*. at ¶¶ 7-8. Felix then exited the White Truck carrying the duffel bag, placed the duffel bag into the Silver Truck, and got into the passenger seat of the Silver Truck. *Id*. at ¶¶ 7-8. The Silver Truck then drove off. *Id* at ¶ 8.

VIPD Officer Gregory Bennerson ("Bennerson") who was also working on the task force investigating Felix, then pulled the Silver Truck over for a traffic violation. (13-cv-111, Dkt. No. 35-4 at ¶¶ 7-8). After the driver of the Silver Truck signed a consent form (13-cv-110, Dkt. No. 1 at 8), Bennerson used a drug-sniffing dog to sniff the Silver Truck's exterior, and the dog alerted towards a grey and black duffel bag inside the vehicle. *Id.* at ¶ 8. Agent Bell, Resident Agent in Charge ("RAC") Timothy Williams ("RAC Williams"), and other agents then arrived on the scene. (13-cv-110, Dkt. No. 1 at 8). RAC Williams spoke to the driver of the Silver Truck, Kim Simon ("Simon"), *id.* at 10, and Agent Bell questioned Felix. (13-cv-111, Dkt. No. 35-1 at ¶¶ 14-15). Upon questioning, Simon stated he knew there was cash in the duffel bag that was in the trunk, but did not know how much. (13-cv-110, Dkt. No. 1 at 8). Simon also stated that Felix had told him he needed to go to the bank. *Id.* Felix reported that the bag contained $400,000.00 that he had been saving since 1978. *Id.* at 9-10. Agent Bell searched the duffel bag and reported that it contained currency that was held together by numerous colored rubber bands and that it did not smell old or musty. (13-cv-111, Dkt. No. 35-1 at ¶ 16).

About thirty minutes after the Silver Truck left the house, agents surveilling Felix's home observed that an individual, later identified as Felix's son (13-cv-111, Dkt. No. 35-2 at ¶ 8), had exited Felix's home carrying a cardboard box and placed the box inside of the White Truck,

which was still parked outside the house (13-cv-111, Dkt. No. 35-3 at ¶¶ 9-10). Two individuals then drove the White Truck out of the neighborhood. *Id.* at ¶ 10. Later, Felix's son arrived at the house in the White Truck and was stopped by Task Force Officer Sean Santos ("Agent S. Santos"). (13-cv-111, Dkt. No. 35-3 at ¶¶ 8-9). With Defendant's consent, Santos then searched the vehicle for weapons. *Id.* at ¶ 10. He discovered a cardboard box in the White Truck, removed a cloth covering the box, and observed "a large undetermined amount of U.S. Currency." *Id.* at ¶ 10.

The DEA then executed a warrant and conducted a search of Felix's house and the White Truck. Inside the White Truck, the DEA found a cardboard box containing one kilogram of cocaine and $62,500.00 in cash.  (13-cv-111, Dkt. No. 35-1 at ¶ 20). Task Force Officer Donnell Samuel ("TFO Samuel") reported that a backpack containing what appeared to be marijuana was also recovered from behind the driver's seat of the White Truck.  (13-cv-111, Dkt. No. 35-5 at ¶ 9). It is undisputed that the substances found were cocaine and marijuana. After the search of Felix's house and the White Truck, Felix told Agent Bell and RAC Williams that all of the drugs and money found in the White Truck belonged to Felix and not his son. *Id.* at ¶ 21.

Felix was never charged with any criminal activity related to this investigation. (13-cv-111, Dkt. No. 46 at 3).  Felix's son was charged with possession of cocaine and marijuana in relation to the seizures from the White Truck. *Id.* While neither party has provided the Court with a docket number or judgment of acquittal for Felix's son, the Government has not disputed that Felix's son was acquitted. *See id.*

The Government argues that the White Truck is subject to forfeiture because it was "used or intended to be used to facilitate drug trafficking in violation of federal law[.]" (13-cv-111, Dkt. No. 36 at 6). The Government further argues that the $365,575.00 in U.S. Currency

("Defendant Currency") is subject to forfeiture because it was involved in Felix's "drug trafficking activities, represents moneys furnished or intended to be furnished in exchange for illegal drugs, is proceeds traceable to such an exchange, and/or was used or intended to be used to facilitate drug trafficking in violation of federal law." (13-cv-110, Dkt. No. 67 at 5). The Government also argues that Felix lacks standing to challenge certain portions of Defendant Currency because, by his own admission, his daughters owned that property. *Id.* at 5.

As to both the White Truck and Defendant Currency, Felix argues that he and his son have not been convicted of a crime and that the Government cannot prove the underlying criminal activity it claims supports its forfeiture allegations. (13-cv-111, Dkt. No. 45 at 5); (13-cv-110, Dkt. No. 74 at 6). While Felix claims ownership of Defendant Currency, he does not specifically address the Government's standing argument.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    General Summary Judgment Principles

"[I]t is clear that Federal Rule of Civil Procedure 56 and the case law interpreting that rule control the disposition of summary judgment motions in forfeiture proceedings." *United States v. 717 S. Woodward St.*, 2 F.3d 529, 532 (3d Cir. 1993). To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the uncontroverted facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *King v. Police and Fire Federal Credit Union*, 2019 U.S. Dist. LEXIS 86511 at *4 (E.D. Pa. May 22, 2019). Thus, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 F. App'x 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)). "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248.

In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, who is entitled to every reasonable inference that can be drawn from the record." *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (internal citations and quotations omitted). In addition, "at the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." *Anderson v. Warden of Berks County Prison*, 602 F. App'x 892, 895 (3d Cir. 2015) (internal citations and quotation marks omitted).

### B.    Summary Judgment in the Forfeiture Context

"A summary judgment motion in a forfeiture action" is "evaluated in light of the procedural requirements of forfeiture law." *United States v. 1984 White Sonic Speedboat S/N JCL24066M84C*, 2008 U.S. Dist. LEXIS 90435, at *7-9 (D.V.I. Nov. 5, 2008) (citing *United States v. Premises Known as 717 S. Woodward Street*, 2 F.3d 529, 533 (3d Cir. 1993)). Title 18 U.S.C. § 983 provides the procedural requirements governing the parties' respective burdens of proof in civil forfeiture actions. *Id.* at *8; *see United States v. Real Prop. 10338 Marcy Rd. Northwest*, 938 F.3d 802, 808 (6th Cir. 2019); *United States v. Real Prop. Located at 8 Drift St.*, 2020 U.S. Dist. LEXIS 28778, at *11-12 (D.N.J. Feb. 20, 2020).

Under 18 U.S.C. § 983, "[t]o prevail on its claim that the property at issue in this case is subject to forfeiture because it was 'involved in the commission of a criminal offense,' the Government must show 'that there was a substantial connection between the property and the offense.'" *United States v. $48,880, More or Less, in U.S. Currency*, 2018 U.S. Dist. LEXIS 45217, at *4-5 (W.D. Tex. Mar. 20, 2018) (citing 18 U.S.C. § 983(c)(3)). For purposes of summary judgment, the showing of a "substantial connection" cannot be made by using hearsay evidence. *United States v. $48,880, More or Less, in U.S. Currency*, 2018 U.S. Dist. LEXIS 45217, *4-5 (W.D. Tex. Mar. 20, 2018) (18 U.S.C. § 983 "no longer permit[s] the introduction of hearsay to support a showing of substantial connection.").

Title 18 U.S.C. § 983(c) further provides, in pertinent part, that "[i]n a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property—(1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c). "So long as the Government can meet [the] civil burden of proof . . . separate criminal charges . . . are not necessary." *United States v. $7,679.00 U.S. Currency*, 2015 U.S. Dist. LEXIS 158808, at *10-11 (W.D.N.Y. Nov. 24, 2015) adopted by 2016 U.S. Dist. LEXIS 203132, at *1 (W.D.N.Y. Jan. 26, 2016). For that reason, the government can also bring "a subsequent forfeiture action after an acquittal in the underlying criminal action." *United States v. 2000 Ford Excursion*, 2006 U.S. Dist. LEXIS 28809, at *8 (D. Utah May 4, 2006).

"Once the Government has met its burden, the burden then shifts to the claimant to prove by a preponderance of evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture." *United States v. Twenty Thousand Three Hundred and Ninety Two Dollars*, 546 F. Supp. 2d 302, 305 (D.V.I. Mar. 4, 2008). Title 18 U.S.C. § 983(d) also

8

explicitly provides claimants with the ability to assert an Innocent Owner affirmative defense, but requires that "[t]he claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d). For that reason, at the summary judgment stage a claimant asserting such a defense must furnish affirmative proof that (s)he is an innocent owner in order to avoid summary judgment on that basis. *United States v. All Right*, 2009 U.S. Dist. LEXIS 93086, at *46 (D.N.J. Oct. 5, 2009) ("She has submitted no evidence . . . Therefore, no reasonabl[e] juror could find that Maria Papp has established by a preponderance of the evidence that she is an innocent owner, and the Court will grant summary judgment ordering forfeiture of her interest."). A claimant's sworn statement that (s)he was unaware that the property was connected to the unlawful activity alleged to give rise to the forfeiture claim may be sufficient to create a genuine dispute of material fact as to a claimant's status as an innocent owner, and, therefore, may prevent summary judgment. *See United States v. One 2001 Chevrolet Suburban*, 2007 U.S. Dist. LEXIS 62010, at *11-12 (M.D. Ala. Aug. 22, 2007) ("Fountain's sworn statement that she did not know about the conduct giving rise to the forfeiture is sufficient to create a genuine issue of material fact as to whether she is an innocent owner of the Defendant vehicle.")

When the Government challenges a claimant's standing "'at the summary judgment stage, a claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the *res* such that he would be injured if the property were forfeited to the United States.'" *United States v. Real Prop. Located at 8 Drift St.*, 2015 U.S. Dist. LEXIS 110110, at *10-11 (D.N.J. Aug. 20, 2015) (quoting *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). "This threshold burden is not rigorous . . . The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices."

*Id.* (internal quotation omitted). At the summary judgment phase, "the district court must ask itself whether 'a fair-minded jury' could find that the claimant had standing on the evidence presented." *Id.* (citing *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012)). "The fact that property was seized from the claimant's possession, for example, may be sufficient evidence, when coupled with a claim of ownership, to establish standing at the summary judgment stage." *$133,420.00 in U.S. Currency*, 672 F.3d at 639; *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015) ("possession of currency when it was seized counts as some evidence in this context"); *$148,840.00 in U.S. Currency*, 521 F.3d at 1273 ("Thus, because Austin's assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that Austin was driving, we hold that Austin has established constitutional standing at this stage of the litigation.").

## III.  DISCUSSION

### A.    Defendant Property (the White Truck)

The Government argues that the White Truck is subject to forfeiture because it is undisputed that the White Truck was used to facilitate, and had a substantial connection to, Felix's drug trafficking activities, including transporting drug proceeds on June 4, 2013 and transporting drugs and drug proceeds on June 5, 2013.

First, the Government argues that "Felix's use of the defendant property on June 4, 2013 to facilitate, or make easier, a money laundering offense on June 4, 2013, subjects the defendant property to forfeiture." (13-cv-111, Dkt. No. 36 at 9). The Government specifically argues that "[18 U.S.C.] Section 1956 makes it a crime to conduct or attempt to conduct a financial transaction knowing that the property involved in the financial transaction represents the

10

proceeds of drug trafficking" and "that the defendant property is [therefore] subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A)[.]" *Id.* at 10-11.

The Government contends that it is an undisputed fact that the White Truck was used to transport a duffel bag containing a large sum of U.S. currency on June 4, 2013. For this proposition, the Government relies on paragraphs 8-11 of Agent Bell's Declaration. Agent Bell describes seeing Felix arrive at a "pre-arranged location" in the Silver Truck, meet with an undercover agent, and leave that location. (13-cv-111, Dkt. No. 35-1 at ¶ 8). However, Agent Bell, at the undercover agent's request, did not follow Felix and therefore ultimately did not view the alleged June 4, 2013 money drop. *Id.* Instead, he began traveling to Felix's house to conduct further surveillance on Felix's home. *Id.* at ¶ 9. While traveling to Felix's home, Agent Bell reports witnessing Felix's son driving the White Truck in the opposite direction. *Id.* Agent Bell, however, did not report seeing a duffel bag in the White Truck or otherwise witness Felix's son commit a crime at that time. *Id.* Agent Bell then recounts what the undercover agent said during a debriefing—namely that Felix's son arrived in the White Truck with a duffel bag containing a large sum of currency, handed the bag to Felix, and Felix handed the bag to the undercover agent. *Id.* at ¶¶ 10-11.

Agent Bell's recounting of the undercover agent's debriefing constitutes hearsay. *United States v. Ortiz*, 2013 U.S. Dist. LEXIS 2939, at *12 (E.D. Pa. Jan. 7, 2013) ("testimony . . . based in whole or in part on information provided by other agents is hearsay."). The Government does not provide a declaration from the undercover agent, nor does the Government offer an explanation as to why the undercover agent's debriefing or Agent Bell's recounting of the debriefing would not be inadmissible hearsay. *Id.* ("The Government has not identified, and the Court has not found, any applicable exception to the Hearsay Rule regarding such testimony. It is

therefore excluded.").  As such, the Court cannot consider Agent Bell's recounting of the undercover agent's debriefing as part of the Government's summary judgment motion.  *United States v. $48,880, More or Less, in U.S. Currency*, 2018 U.S. Dist. LEXIS 45217, at *4-5 (W.D. Tex. Mar. 20, 2018). Thus, the only admissible evidence the Government has offered as to the White Truck's connection to the alleged June 4, 2013 money laundering is that Agent Bell, and others, observed the White Truck being driven by Felix's son in a direction where agents believed a money drop was going to occur. This is insufficient at the summary judgment stage to establish as a matter of law a substantial connection to the alleged money laundering on June 4, 2013.

Second, the Government argues that the White Truck was used in the "June 5, 2013, transportation of cocaine, marijuana, and drug trafficking proceeds" and that such usage "is a violation of 21 U.S.C. § 881(a)(4)." (13-cv-111, Dkt. No. 36 at 9). For this proposition, the Government relies on the Declarations of Agent Bell, Officer Aldemar Santos ("Officer A. Santos"), Agent S. Santos, Officer Bennerson, and TFO Samuel.  On June 5, 2013, Officer S. Santos observed Felix's son and another individual place a cardboard Fabuloso box into the White Truck. (13-cv-111, Dkt. No. 35-3 at ¶ 9). Officer S. Santos and Agent Bell then observed Felix's son drive away from Felix's house in the White Truck. *Id.* at 10; (13-cv-111, Dkt. No. 35-1 at ¶ 13).  Officer A. Santos then observed Felix's son return to the house in the White Truck and stopped Felix's son. (13-cv-111, Dkt. No. 35-2 at ¶ 8-9). Felix's son gave consent to search the White Truck for weapons, and Officer A. Santos searched the vehicle. *Id.* at 9. Upon searching the White Truck, Officer A. Santos saw a cardboard "Fabuloso box," removed a cloth covering the top of the box, and saw a large amount of U.S. Currency. *Id.* at 10. Following Officer A. Santos' search for weapons, Officer Bennerson and his K-9 Rico conducted a sniff

check of the vehicle, and Rico alerted to the "presence of a controlled substance odor inside the vehicle." (13-cv-111, Dkt. No. 35-4 at ¶ 9). TFO Samuel then observed the search of the cardboard Fabuloso box, which revealed two plastic bags containing U.S. Currency and a brick shaped object containing a white-powdery substance. (13-cv-111, Dkt. No. 35-5 at ¶ 7-8). TFO Samuel conducted a field test of the white-powdery substance, which tested positive for cocaine. *Id.* at ¶ 8. TFO Samuel also discovered a small black "Domo" bag on the floor of the White Truck, which appeared to contain marijuana. *Id.* at ¶ 9.

Felix then stated to Agent Bell that all of the drugs and money found and seized on June 5, 2013 belonged to Felix and not to Felix's son. (13-cv-111, Dkt. No. 35-1 at ¶ 21). Subsequent lab testing confirmed that the white-powdery substance was approximately 1 kilogram of cocaine and the substance in the "Domo" bag was marijuana. (13-cv-111, Dkt. No. 35-8 at 3). Felix makes several arguments for why summary judgment as to the White Truck is inappropriate, but never disputes that the White Truck transported controlled substances.

Felix first argues that he was never charged with any criminal conduct in connection with the Government's June 5, 2013 seizure of controlled substances and that his son was charged and acquitted in connection with that seizure. Felix, however, does not dispute the Government's factual claim that cocaine, marihuana, and $62,000.00 in U.S. Currency were found in and transported by the White Truck. The fact that charges were not brought against Felix does not preclude a finding that the Government has established that a substantial connection exists between the White Truck and the transportation of controlled substances. *United States v. $7,679.00 U.S. Currency*, 2015 U.S. Dist. LEXIS 158808, at *10-11 (W.D.N.Y. Nov. 24, 2015) ("So long as the Government can meet [the] civil burden of proof at trial, separate criminal charges against Fitch are not necessary") adopted *by* 2016 U.S. Dist. LEXIS 203132, at *1

(W.D.N.Y. Jan. 26, 2016); *United States v. 2000 Ford Excursion*, 2006 U.S. Dist. LEXIS 28809, at \*8 (D. Utah May 4, 2006) (noting that the Government can "bring a subsequent forfeiture action after an acquittal in the underlying criminal action" and recognizing "the difference in the relative burdens of proof in the criminal and civil actions"). Moreover, Felix's son's acquittal does not provide a compelling basis to preclude summary judgment as to the White Truck because Felix—not his son—is the Claimant, and, in this case, it is undisputed that Felix admitted to ownership of the narcotics in the White Truck. (13-cv-111, Dkt. No. 35-5 at ¶ 21).

Felix next argues, without citation to any legal authority, that 21 U.S.C. § 881(a)(4) limits forfeiture to vehicles transporting "controlled substances or the proceeds of the unlawful activity from one point to another for the purpose of completing an unlawful transaction." (13-cv-111, Dkt. No. 46 at 10). The plain language of 21 U.S.C. § 881(a)(4), however, contains no such limitation. Indeed, the plain language of the statute refers to vehicles used in any manner to "facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances. *United States v. One 1975 Mercury Monarch*, 423 F. Supp. 1026, 1029 (S.D.N.Y. 1976) ("In view of the sweeping language of the forfeiture statute, it is of no legal significance . . . that the cocaine may have been intended for Ramos's own personal use, and not intended for sale or resale to others"); *United States v. Sims' Pers. Prop.*, 2013 U.S. Dist. LEXIS 118026, at \*7 (E.D.N.C. Aug. 20, 2013) (granting summary judgment where "plaintiff has established by a preponderance of the evidence that the property is subject to forfeiture where the vehicle was used to transport illegal schedule I and schedule II controlled substances. . . . the facts of this case, where the illegal controlled substances were purposely hidden and transported in claimant's vehicle, also clearly establish a substantial connection between the property and the offense.") (internal quotation omitted).

Further, while Felix argues that the Government's facts do not establish "the [C]laimant's knowing involvement in criminal activity or his knowledge that the vehicle was used to facilitate criminal transactions" (13-cv-111, Dkt. No. 45 at 4), Felix's involvement in any criminal activity or knowledge thereof is not an element that the government must prove in a civil forfeiture action. *See* 18 U.S.C. § 983(c-d); *see United States v. All Right*, 2009 U.S. Dist. LEXIS 93086, at *46 (D.N.J. Oct. 5, 2009). Rather, in order for Felix to avoid summary judgment on the grounds that he was unaware that the White Truck was being used to transport controlled substances and/or facilitate the possession of controlled substances, Felix would need to point to evidence that creates a material dispute of facts as to Felix's status as an Innocent Owner under the statute. In the absence of Felix introducing admissible evidence of his denial of knowledge, however, Felix has left nothing for the jury to consider as to any affirmative defense based on his lack of knowledge. *United States v. 2621 Bradford Drive*, 369 Fed. App'x. 663, 666 (6th Cir. 2010) ("Franz did not supply any evidence to establish her claim of innocent ownership"); *see United States v. All Right*, 2009 U.S. Dist. LEXIS 93086, at *46 (D.N.J. Oct. 5, 2009) ("She has submitted no evidence that she falls into either of those categories. Therefore, no reasonabl[e] juror could find that Maria Papp has established by a preponderance of the evidence that she is an innocent owner, and the Court will grant summary judgment ordering forfeiture of her interest in the residence"); *compare United States v. One 2001 Chevrolet Suburban*, 2007 U.S. Dist. LEXIS 62010, at *11-12 (M.D. Ala. Aug. 22, 2007) ("Fountain's sworn statement that she did not know about the conduct giving rise to the forfeiture is sufficient to create a genuine issue of material fact as to whether she is an innocent owner of the Defendant vehicle"); *United States v. 2000 Jeep Grand Cherokee*, 2008 U.S. Dist. LEXIS 89350, at *11 (N.D. Iowa Oct. 23, 2008) ("Ms. DeLeon's sworn statement that she did not know about the conduct giving rise to the

forfeiture, as well as her son's pay stubs, are sufficient to create a genuine issue of material fact as to whether she is an innocent owner of the defendant vehicle."). Felix has failed to provide the Court with any evidence to support his status as an Innocent Owner with respect to the White Truck and therefore cannot avoid summary judgment on that basis.

Accordingly, the Government has established that no genuine issue of material fact exists as to the White Truck's involvement in the transportation of controlled substances on June 5, 2013 and, as such, has established by a preponderance of the evidence that the White Truck is substantially connected to the crime of the possession of controlled substances. Thus, the Court will grant the Government's Motion for Summary Judgment as to the White Truck, including the proceeds from the interlocutory sale of that vehicle.

### B.    Defendant Currency ($365,575.00 in U.S. Currency)

The Government seeks the forfeiture of $365,575.00 in U.S. Currency seized during a traffic stop of the Silver Truck on June 5, 2013. The Government argues that Felix lacks standing to challenge a portion of Defendant Currency and that all of Defendant Currency is subject to forfeiture "based on the totality of circumstances." (13-cv-110, Dkt. No. 67 at 4).

### 1.    Standing as to $96,000.00 of Defendant Currency

The Government argues that Felix lacks standing to challenge the forfeiture of $96,000.00 of Defendant Currency. Specifically, the Government argues that Felix admitted, during his deposition and in response to the Government's Requests for Admissions, that $96,000.00 of Defendant Currency belongs to his daughters—$76,000.00 belongs to Carmen Felix and $21,000.00 belongs to Angela Felix—and that the affirmations of Carmen Felix and Angela Felix further substantiate their ownership of the $96,000.00.  Felix does not respond to the

Government's contention that he lacks standing to assert a claim over a portion of Defendant Currency.

Felix's response to the Government's Special Interrogatory No. 4 states that "I am the sole owner of the money seized; and the amount is $400,000.00; and not [$]365,575.00 as was claimed by the Government. My two daughters Carmen M. Felix and Angela K. Felix contributed to the savings but the money is considered mine." (13-cv-110, Dkt. No 68-10 at 4). Felix's answer to special interrogatory four cites to two letters submitted by his daughters, which it appears Felix claims support his view that the "the money is considered mine," but which the Government claims establish that, even based on Defendant's version of events, at least that portion of Defendant Currency did not belong to Felix.  While the letters provide some support to suggest that Felix's daughters may claim a portion of Defendant Currency,[3] such claims do not divest Felix of standing where he continues to claim that he owns all of Defendant Currency. The relevant excerpt of the deposition the Government affixed as an exhibit does not clearly elucidate who owns the portion of Defendant Currency. It begins as follows:

> A. How? Because I'm the one who is saving it for them.
>
> Q. What did--, was it money that she gave you, or was it your money?
>
> A. "it is my money, but I op--, I gave it to them as a gift for them. It's my money, but it is their money that I have been saving for them – for the future, you know."
>
> . . .

---

[3] Angela Felix's letter states both that her father "assisted [her] financially" and that, while she was living at home, she was able to save "a total of $21,000. (Dkt. No. 68-11 at 5). This does not clarify Felix and his daughter's financial relationship with respect to the $21,000 over which Felix now claims ownership. Carmen Felix's letter states that she saved a total of $75,000, which "was always kept in my father's possession for safe keeping due to the fact [that] it would be accessible in the event of an emergency." *Id.* at 6. Carmen Felix's letter states that it was "my money" and was being deposited "on my behalf." *Id*. at 6.

Q. So, is--, so when you say--, so is $75,000, that money belongs to her?

A. Yes, I gave it to them.

Q. Well, if she--…

A. She saved it.

Q. You gave it to her…

A. I teach her-I teach her, sir. I teach her. I teach her.

Q. Teach her what?

A. How to save this money.

Q. So, she gave you five thousand dollars each year for fifteen years?

A. Yes.

. . .

Q. "OK. But you saved it for them, and you consider it their money?"

A. "Yes."

(13-cv-110, Dkt. No. 68-12 at 18-19).

While Felix appears to make conflicting and ambiguous statements in his deposition, the Court cannot say, as the Government argues, that Felix conceded that he lacks any interest in the portion of Defendant Currency at issue such that there is not a material dispute of facts. To the contrary, Felix stated during his deposition that "it is my money." *Id.* Further, in response to the Government's Special Interrogatory, Felix stated "the money is considered mine" despite his daughters having saved a portion of it. (13-cv-110, Dkt. No 68-10 at 4). While Felix appears to contradict those answers at different times during his deposition testimony, and in his admissions, the Court must view the testimony "in the light most favorable to [the Claimant], the non-moving party." *$148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).

18

Further, the fact that the currency was found in Felix's possession at the time of seizure weighs in favor of denying summary judgment. *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015) ("possession of currency when it was seized counts as some evidence in this context"); *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 639 (9th Cir. 2012) (similar). Given the disputed factual record, the Court declines to grant summary judgement as to the $96,000.00 portion of Defendant Currency that the Government argues Felix does not have standing to challenge. "We stress that our conclusion that [Felix] has constitutional standing to challenge the forfeiture at this point in the proceedings does no more than give him the right to contest that his property rights in the cash are properly subject to forfeiture." *$148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).

### 2. Connection of Defendant Currency to Criminal Activities

The Government argues that the totality of the circumstances demonstrates that Defendant Currency is subject to forfeiture—namely that the Government has produced "ample evidence showing the property's substantial connection to Felix's drug trafficking activities" and that "Felix has been unable to provide any *credible* evidence that he earned the defendant property through legitimate means." (13-cv-110, Dkt. No. 67 at 13) (emphasis added).

Here, Felix has put forth evidence to dispute the Government's claim that Defendant Currency was related to Felix's alleged drug trafficking activity. "Felix denies the claim that prior to June 5, 2013 he delivered bags filled with large sums of money to undercover agents." (13-cv-110, Dkt. No. 74 at 6); (13-cv-110, Dkt. No. 68-12 at 60). He further argues that he accumulated the $365,575.00 in U.S. Currency that the Government seized from the Silver Truck on June 5, 2013 from various sources of legitimate employment. (13-cv-110, Dkt. No. 74 at 2-3). Accordingly, Felix argues that a genuine issue of material fact exists as to the source of the recovered currency. *Id.* at 9. The Court agrees.

19

The record contains evidence supporting Felix's position sufficient to create a material dispute of fact in that: (1) Felix testified at his deposition as to how his work history would have permitted him to legally earn Defendant Currency and why he possessed Defendant Currency on June 5, 2013 (13-cv-110, Dkt. No. 68-12 at 17-20); (2) Felix gave a statement following the June 5, 2013 Silver Truck traffic stop that is consistent with his deposition testimony (13-cv-110, Dkt. No. 74 at 6) ("Felix, Jr. told them that the bag contained approximately $400,000.00 dollars which he accumulated over the past thirty four (34) years from his employment with Antillean Engineering, and boat repairs done at his home."); (13-cv-110, Dkt. No. 68 at 4) (citing Agent Bell's Declaration at ¶ 14 for the fact that "Felix told Bell that he had been saving the money since 1978 at his home to purchase property, and that he was going to deposit the money at the Bank of St. Croix that morning."); (3) Felix answered special interrogatories consistent with his deposition testimony (13-cv-110, Dkt. No. 68-10 at 4-5, 7); and (4) Felix's daughters, Carmen Felix and Angela Felix, both submitted declarations supporting Felix's claim that he and his daughters had saved Defendant Currency from legitimate sources of income (13-cv-110, Dkt. 68-10 at 10-11). Felix specifically testified that he was intending to purchase a property from Mr. Carlos Juan Nieves on June 5, 2013 and then deposit the remaining currency in the bank. (13-cv-110, Dkt. No. 68-12 at 17-20). Felix represents to the Court in his Opposition[4] that Carlos Juan Nieves was deposed and testified that Felix "entered into an oral agreement with Nieves for the purchase of a piece of Nieves' real property." (13-cv-110, Dkt. No. 74 at 7). Felix represents that Nieves "further testified that Felix contacted him after 'June 5, 2013 and informed him that Felix was unable to purchase the property because he no longer had the money.'" (13-cv-110, Dkt. No.

---

[4] Felix does not attach Carlos Juan Nieves' deposition transcript as an exhibit. The Government, however, does not challenge Felix's representation that Nieves testified at his deposition as Felix describes.

74 at 7). Further, Kim Simon, the driver of the Silver Truck during the June 5, 2013 traffic stop, reported that "Felix would need to go to drop the money off at the bank later in the morning" (13-cv-110, Dkt. No. 1 at ¶ 9), and Carmen Felix's Declaration also stated that the Felix was taking the money Felix's daughters had given him to the bank. (13-cv-110, Dkt. 68-10 at 11).

While the Government has provided a number of facts[5] from which a reasonable jury could infer[6] that Defendant Currency is related to Felix's alleged drug trafficking activity and therefore subject to forfeiture, Felix has also put forth the above discussed facts to suggest that Defendant Currency was legally acquired and has no connection to any criminal activity. The Government's motion asks the Court to draw inferences, weigh the evidence, and make credibility determinations. On summary judgment, the Court cannot, however, draw inferences in the moving party's favor from the totality of circumstances, weigh those inferences against conflicting evidence, or make such credibility determinations. *United States v. Ten Thousand Six*

---

[5] The Government contends that when the following facts "are considered in the aggregate, they provide compelling evidence that the defendant property was substantially connected to drug trafficking": Felix's November 28, 2012 and June 4, 2013 delivery of a suitcase and a duffel bag containing large amounts of U.S. Currency to an undercover agent; Felix invoking the Fifth Amendment at his deposition; the June 5, 2013 seizure of controlled substances and U.S. Currency from the White Truck parked outside of Felix's home; the smell and appearance of the seized currency; the method of storing the seized currency in the same manner as the prior money drops; the fact that a drug dog sniff alerted to the presence of drugs in the duffel bag; and Felix's work history and economic circumstances, as demonstrated by his tax returns, family obligations, and history of use of government housing.   (Dkt. No. 67 at 4, 13-15).

[6] During Felix's deposition, he was asked "have you ever dropped, you know, delivered bags of cash to anyone?" (Dkt. No. 68-12 at 6). Felix's counsel instructed him not to answer, but Felix answered "no." *Id.* Felix subsequently invoked the Fifth Amendment.  *Id.* at 62. As a part of the Government's totality of circumstances argument, the Government asks the Court to draw a negative inference from Felix's "refusal during his deposition to answer questions regarding his activities on November 28, 2012 and June 4, 2013." (Dkt. No. 67 at 14). Even if the Court were to draw a negative inference as to what transpired on November 28, 2012 and June 4, 2013, that would not change the Court's analysis as to whether a genuine issue of material fact exists as to the source of the Currency seized from the Silver Truck on June 5, 2013. Accordingly, the Court does not reach the question of whether it is appropriate to draw a negative inference from Felix invoking the Fifth Amendment during his deposition in this case.

*Hundred Forty-Eight ($10,648.00) Dollars in U.S. Currency*, 975 F. Supp. 2d 163, 168 (D.N.H. 2012) ("However, as the record stands, the court could only grant summary judgment to the government by drawing far too many inferences in favor of the moving party."); *United States v. $19,054.00 in United States Funds*, 2012 U.S. Dist. LEXIS 132154, at *13 (M.D. Ga. Sept. 17, 2012) ("the Court cannot act as a trier of fact, make credibility determinations, and resolve factual disputes at the summary judgment stage").

While the Government may view Felix and Simon's initial statements given to the DEA, Felix's subsequent interrogatory responses and deposition testimony, Nieves' deposition testimony, and the Declarations of Felix's daughters as lacking credibility in light of the totality of circumstances, such credibility determinations are for the jury. *Anderson*, 602 F. App'x at 895.

## IV.   CONCLUSION

Accordingly, the Court will grant the Government's "Motion for Summary Judgment" (13-cv-111, Dkt. No. 34) as to the White Truck, on June 5, 2013, and will deny the Government's "Motion for Summary Judgment" (13-cv-110, Dkt. No. 66) as to the $365,575.00 in U.S. Currency seized during a traffic stop of the Silver Truck on June 5, 2013.

An appropriate Order accompanies this Memorandum Opinion.

Date:   May 17, 2024                             _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge